# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| DORIS A. WHALEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:17-CV-156-HSM-SKL |
| ) | |
| GLORIA GROSS, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner Doris A. Whaley, a Tennessee inmate proceeding pro se, has filed a federal habeas petition pursuant to 28 U.S.C. § 2254 challenging her Tennessee judgment of conviction for first-degree murder and resulting life sentence. Having considered the submissions of the parties, the State-court record, and the law applicable to Whaley's claims, the Court finds that the petition should be denied.

## I.  SUMMARY OF EVIDENCE & PROCEDURAL HISTORY

Charles Campbell was stabbed to death on August 28, 2006, and Doris A. Whaley was charged with his murder. *State v. Whaley*, No. E2010-00389-CCA-R3-CD, 2011 WL 2519762, at *1, 3 (Tenn. Crim. App. June 23, 2011) *perm. app. denied* (Tenn. Oct. 18, 2011) ("*Whaley I*"). At Whaley's trial, the State presented evidence that Whaley gave several conflicting accounts of what happened the night of the murder, that she had threatened the victim just prior to his murder, that Whaley told Campbell she would kill him if he did not return her cell phone, and that she was enraged and "tearing the house apart" when she counted to five and then told Campbell, "[y]ou're dead." *Id.* at *6, 12. Whaley's son testified that upon arriving at Whaley's home, he witnessed her "scrunched down and leaned over" with a weapon that "looked like a knife" while Campbell lay dying on the floor. *Id.* at *5, 12.

A Washington County jury convicted Whaley on one count of first-degree premeditated murder, and the trial court sentenced Whaley to life imprisonment. *Id.* at *11. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the conviction on direct appeal, and the Tennessee Supreme Court denied discretionary review. *Id.* at *1.

Thereafter, Whaley filed a pro se petition for post-conviction relief in the trial court [Doc. 9-18 p. 8-11]. The trial court appointed post-conviction counsel, who filed an amended petition for post-conviction relief alleging several claims of ineffective assistance of trial counsel [*Id.* at 44-52]. Specifically, post-conviction counsel asserted that trial counsel was ineffective for failing to "present at trial any evidence or testimony regarding Petitioner's medical history;" for failing to "properly prepare, communicate with, and subpoena medical health experts" concerning Petitioner's hand surgeries; for failing to move for a continuance "to investigate the circumstances surrounding the State's obtaining a partially recorded phone conversation between the Petitioner and Betsy Doran;" for failing to "fully investigate and obtain expert testimony that would have contradicted the State's expert witness' testimony regarding "blood spatter" evidence;" and for failing to "assert any of the foregoing grounds for relief" on appeal [*Id.* at 45-49]. Post-conviction counsel also claimed that evidence obtained after Whaley's trial that Whaley's son had committed perjury would, if introduced at a new trial, likely produce a different verdict [*Id.* at 49-50].

An evidentiary hearing was held on Whaley's post-conviction claims. At the hearing, post-conviction counsel chose not to build a record as to the perjury-related claim after the trial court preliminarily concluded that such a statement would be hearsay [*See id.* at 15-20; *see also* Doc. 9-18 p. 94]. However, extensive evidence was offered regarding Whaley's ineffective assistance of counsel claims. Whaley's Social Security Disability records were introduced at the hearing and demonstrated that she had been declared disabled prior to the murder based, in part, on "bilateral carpal tunnel syndrome" [*See, e.g.*, Doc. 9-19 p. 25-28, 115]. Trial counsel testified that he had

2

obtained Whaley's medical records and was aware of her history of osteoarthritis and Carpal Tunnel Syndrome [Doc. 9-18 p. 45; Doc. 9-19 p. 25-27, 29]. He testified that he consulted with the pathologist performing the victim's autopsy regarding whether Whaley's hand conditions would render her unable to commit the murder [Doc. 9-19 p. 38]. Counsel stated the doctor advised him that "it wouldn't take much to hold onto a knife" [*Id*.]. Counsel also testified that "if a doctor said somebody with two carpal tunnel surgeries couldn't hold a knife period then I would have pursued it, but nobody said that" [*Id*. at 40]. Finally, trial counsel expressed his doubts regarding the extent of Whaley's hand difficulties, stating that he saw her daily carrying drinks and driving herself to his office, and that he did not see "anything from the autopsy that would make [him] want to think there's no way she could have" stabbed the victim [*Id*. at 39].

Other witnesses also testified, including Whaley, who acknowledged that that she could drive short distances, hold a soda can, and eat with a fork [*Id*. at 108]. Witness Tracy Harris testified that she had been friends with Whaley for 25 years and stated that while Whaley complained of arthritis in her hands if she performed routine activities for too long, she could shower herself, dress herself, feed herself, and that she did not complain of pain when she ate or drank [*Id*. at 96-104]. Whaley's daughter confirmed that Whaley could feed and dress herself, brush her hair, and use a cell phone [*Id*. at 125-32].

Following the evidentiary hearing, the post-conviction trial court produced a written order failing to credit Whaley's testimony that she was physically incapable of committing the murder, noting, in part, that Whaley did not "say anything" about her medical conditions in her pro se petition for post-conviction relief, nor did she inform investigating officers of her disability in the nine different accounts of the murder she gave to law enforcement [Doc. 9-18 p. 100-102, 107]. The Court denied post-conviction relief, finding trial counsel performed a reasonable investigation and did not render ineffective assistance [*Id*. at 72-109]. The TCCA affirmed the denial, and the

Tennessee Supreme Court denied discretionary review [Doc. 9-24; Doc. 9-27]. *See Whaley v. State*, No. E2014-02378-CCA-R3-PC, 2016 WL 2901997, at *2 (Tenn. Crim. App. May 13, 2016) *perm. app. denied* (Tenn. Sept. 23, 2016) ("*Whaley II*").

On or about September 11, 2017, Whaley filed the instant petition for federal habeas relief, raising the following claims, as paraphrased by the Court:

Claim 1: Ineffective assistance of counsel due to counsel's failure to:

1. Present evidence of Whaley's medical history of osteoarthritis and "carpal tunnel issues;"

2. "[P]repare, communicate with, and subpoena medical health experts who would have provided testimony about Petitioner's medical condition(s) and the surgeries to her hands;"

3. "[M]ove the Court for a continuance" to investigate the "circumstances surrounding the State's obtaining a partially recorded phone conversation between Petitioner and [witness] Betsy Doran;"

4. "[F]ully investigate and obtain expert testimony that would have contradicted the State's expert witness' testimony regarding 'blood spatter'"; and

5. Assert any of the ineffective assistance of counsel claims on appeal.

Claim 2: Whaley possesses newly discovered evidence that casts doubt on the credibility of a State witness.

## II. LEGAL STANDARD

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of

facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton,* 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State-court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits her federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of her available State remedies, and the State court to which she would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides

an independent and adequate basis for the dismissal. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731-32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91 (1977). "Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that her trial counsel rendered ineffective assistance. *See id.* at 753. Additionally, the prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding prejudice showing requires petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to h[er] *actual* and substantial disadvantage, infecting h[er] entire [proceeding] with error of constitutional dimension") (emphasis in original). A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### III. DISCUSSION

#### A. PROCEDURALLY DEFAULTED CLAIMS

Whaley presented Claim 1(2)-(5) to the trial court on post-conviction review [Doc. 9-18 p. 44-52]. She did not, however, present these claims to the TCCA on either direct appeal or post-conviction appellate review [*See* Doc. 9-12 and Doc. 9-22]. A claim must be presented to the TCCA in order to be exhausted under 28 U.S.C. § 2254(b). *See Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003); *see also* Tenn. S. Ct. R. 39 (establishing presentation of claim to TCCA is sufficient to exhaust State remedies). Therefore, by failing to pursue these claims to the TCCA, Whaley failed to fully exhaust these claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)

(holding that proper exhaustion requires petitioner to pursue claim through "one complete round of the State's established appellate review process").

Whaley could not now return to State court and exhaust these claims due to Tennessee's procedural rules. *See* Tenn. Code Ann. § 40-30-102(a) (one-year limitation period); § 40-30-102(c) ("one petition" rule). Accordingly, these claims are technically exhausted but procedurally defaulted. *See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted."). Whaley has not argued that cause and prejudice exist to overcome the default.

While Whaley has not argued the ineffective assistance of post-conviction counsel as "cause" for her default, the Court addresses the issue out of an abundance of caution. The Court notes that, generally, the ineffective assistance of post-conviction counsel cannot serve as cause for a procedural default. *Coleman*, 501 U.S. at 754. The Supreme Court altered that general rule in *Martinez v. Ryan*, holding that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. 1, 9 (2012). However, the rule in *Martinez* "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings[.]" *Id.* at 16. Thus, *Martinez* does not apply to a claim of ineffective assistance of trial counsel raised in the initial-review collateral stages but defaulted on appeal, as is the case here. *See Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals"); *West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015) (stating that

*Martinez* does not apply to a claim the petitioner raised in the initial review post-conviction proceeding but failed to preserve on appeal).

Therefore, any alleged ineffectiveness of post-conviction counsel cannot serve as cause to excuse the default of Claim 1(2)–(4), as these claims were raised before the post-conviction trial court and denied. Additionally, as to Whaley's Claim 1(5), the Supreme Court has rejected an argument that *Martinez* applies to excuse the default of ineffective assistance of appellate counsel claims. *See Davila v. Davis*, 137 S. Ct. 2058, 2062-63 (2017). Therefore, Whaley has not established the requisite cause and prejudice, or that a fundamental miscarriage of justice would result from failure to review these claims on their merits. Accordingly, Whaley has not provided grounds to excuse the procedural default of these claims, and they must be dismissed.

### B. PROPERLY EXHAUSTED CLAIM (CLAIM 1(1))

Whaley's Claim 1(1) – that trial counsel was ineffective in failing to present at trial evidence of her osteoarthritis and Carpal Tunnel Syndrome – was presented to the TCCA on post-conviction appellate review, and is, thus, properly exhausted [Doc. 9-22 p. 27-30]. This Court's review of that claim is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief on a claim of ineffective assistance of counsel: (1) she must demonstrate constitutionally deficient performance by counsel, and (2) she must demonstrate actual prejudice as a result of such ineffective assistance. *Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687-88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id*. at 689. In fact, counsel is to be afforded a presumption

that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id*.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State-court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

Trial counsel testified he had reviewed Whaley's medical records and consulted with the State's expert regarding whether her impediments would make it physically impossible for her to stab Campbell to death [Doc. 9-19 p. 38]. Trial counsel stated that the pathologist did not confirm this possible theory of defense, and that he would have pursued any expert opinion that would have supported a theory that someone with two carpal tunnel surgeries could not have held a knife [*Id.* at 40]. Moreover, counsel personally observed Whaley daily and determined that his observation and the absence of supporting facts in the autopsy would not sustain an inference that Whaley could not have committed the murder [*Id.*]. Whaley herself confirmed that she could drive, hold drinks, and eat with a fork, while a close friend and her daughter testified that she could shower, dress herself, feed herself, use a cell phone, and brush her hair [*Id.* at 96-104, 108, 125-32].

9

The record in this case shows that trial counsel reasonably investigated Whaley's medical issues and determined further investigation would not yield more favorable results. *See Strickland*, 466 U.S. at 690-91 ("Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable"). Therefore, the Court concludes, the decision rejecting this claim is not contrary to, nor does it involve an unreasonable application of, *Strickland* or its progeny, nor is it based on an unreasonable determination of facts in light of the evidence presented. Whaley is not entitled to federal habeas relief on this claim.

### C. NEWLY DISCOVERED EVIDENCE (CLAIM 2)

In Claim 2, Whaley alleges a claim of "newly discovered evidence" [Doc. 2 p. 7-8]. She contends that a witness, Ms. Rosenbaum, would testify that she spoke with Whaley's son after the trial and allegedly learned that Whaley's son committed perjury [*Id*.].

Courts have held that the existence of newly-discovered evidence relevant to guilt is not a ground for federal habeas relief absent some indication that the newly-discovered evidence pertains to a federal constitutional violation. *See, e.g., Dickey v. Dutton*, 595 F. Supp. 1, 2 (M.D. Tenn. 1983) (citing *Townsend v. Sain*, 372 U.S. 293, 317 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992)). Here, Claim 2 alleges newly-discovered evidence that challenges Whaley's confinement based on potential perjury, which does not allege a federal constitutional violation, but rather, calls into question the credibility of a witness. *See Dickey*, 595 F. Supp. 2d at 2; *Townsend*, 372 U.S. at 317; *see also* 28 U.S.C. § 2254(a) (application for writ of habeas corpus may be granted only on the ground that the State prisoner is in custody in violation of the Constitution). Accordingly, Claim 2 does not plead a federal constitutional violation and is non-cognizable in this proceeding.

### IV. CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability ("COA") before she may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue

unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that Whaley will be **GRANTED** a COA on Claim 1(1) – that counsel rendered ineffective assistance in failing to present evidence of her medical history of osteoarthritis and carpal tunnel issues. A COA will be **DENIED** as to the remaining issues.

## V. CONCLUSION

Whaley has failed to demonstrate an entitlement to federal habeas relief. Therefore, her petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**. A COA from this decision will be **GRANTED** solely as to Whaley's claim that her attorney rendered ineffective assistance in failing to present evidence at trial of her medical history of osteoarthritis and carpal tunnel disease. A COA is **DENIED** as to all other claims.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

                                          */s/ Harry S. Mattice, Jr.*
                                          HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE